O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

STEVE O. WILKINSON,           §
                              §
            Plaintiff,        §
                              §
v.                            §        CIVIL ACTION NO. H-04-1447
                              §
VARCO, L.P.,                  §
                              §
            Defendant.        §

MEMORANDUM AND ORDER

Pending is Defendant Varco, L.P.'s Motion for Summary Judgment
(Document No. 11), to which no response has been filed and which is
therefore deemed unopposed pursuant to Local Rule 7.4.[1]   After
carefully considering the motion and the applicable law, the Court
concludes that the motion should be granted.

I.  Background

Plaintiff Steve O. Wilkinson ("Wilkinson") alleges that his
former employer, Defendant Varco, L.P. ("Varco"), discriminated
against him in violation of the Age Discrimination in Employment
Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA").

The Brandt Division of Varco develops, manufactures, and sells
equipment used in the oilfield drilling industry.   *See* Document

---

[1] Although some filings identify the Defendant as "Brandt-
Brandt" and/or "Varco-Brandt," it is uncontroverted that Varco,
L.P. is the proper Defendant to this action.

No. 12 ex. C ¶ 4.  In 1980, Wilkinson went to work for Brandt Company (which later became the Brant Division of Varco) as a fitter/welder in the Fabrication Department.  *See* id. ex. A, at 36.[2]  The Fabrication Department is staffed primarily by fitter/ welders, programmers, and machine operators.  *See* id. ex. C ¶ 6. Varco considers these positions to be "revenue generating," because they involve the building of equipment sold to customers, or the programming of machines that cut out parts for equipment sold to customers.  *See* id. ¶¶ 7-8.  Depending upon business needs, the Fabrication Department also maintains two "non-revenue generating" positions: tool room attendant and materials handler.  *See* id. ¶ 9. The tool room attendant repairs tools, hands them out, and orders supplies, while the materials handler takes needed materials to the proper workstations.  *See* id. ¶¶ 10-11.

While working in the Fabrication Department, Wilkinson received numerous pay increases, some of which bear the signature of his supervisor, James Adams ("Adams").  *See* id. ex. A, at 39-40; ex. B exs. A-H.  In October, 1999, Wilkinson took medical leave because he was experiencing carpal tunnel syndrome in his hands, and needed to have stents inserted in his arteries.  *See* id. ex. A, at 47-48.  Although released to return to work in November, 1999, Wilkinson decided to resign and pursue a career in truck driving.

_____

[2] In 1982, Tuboscope purchased Brandt Company, and Tuboscope eventually merged with Varco.  *See* Document No. 12 ex. B ¶ 6.

*See* id., at 49, ex. 5; ex. B exs. P-Q.  Varco permitted Wilkinson
to resign with six weeks notice, which allowed him to receive
additional vacation benefits.  *See* id. ex. B ¶ 8, exs. R-S.
Furthermore, Adams agreed that Wilkinson could return if his new
career did not work out.  *See* id. ex. C ¶ 14.

        In March, 2000, Wilkinson, who was then 53, reapplied for
employment with Varco and was rehired by Adams as a fitter/welder.
*See* id. ex. B ex. T; ex. C ¶ 15.  Wilkinson  took medical leave in
the Fall of 2001, however, because he  suffered a heart attack and
required open heart surgery.  *See* id. ex. A, at 55; ex. B ex. U.
On November 30, 2001, Wilkinson's doctor released him to return to
work on "light duty until further notice."  Id. ex. B ex. V.  The
only light duty position at the time was that of tool room
attendant, which was held by Robert Sapien ("Sapien"), who was in
his late 20s.  *See* id. ex. B ¶ 11.  Varco transferred Sapien to a
different position and allowed Wilkinson to serve as tool room
attendant.  *See* id. ¶ 12.  Varco continued to pay Wilkinson at a
fitter/welder rate, even though the tool room attendant position
paid--and Sapien had received-- approximately $3.00 less per hour.
*See* id. ¶¶ 13-14.  In January, 2002, Wilkinson applied for a
position in Varco's Quality Control department.  *See* id. ex. A, at
90.  Varco, however, ultimately gave the position to employee
Robert Simpson, who was younger than Wilkinson but had prior

experience in that particular position.  *See* id. at 92-93; ex. B
¶ 17.

During October, 2003, Varco's business declined, and Varco
determined that a reduction in force ("RIF") was needed.  *See* id.
ex. B ¶ 15; ex. C ¶ 16.  With the input and approval of Varco's
Human Resources department, Adams decided to eliminate the non-
revenue generating positions in the Fabrication Department and
delegate the remaining responsibilities to Sapien, who was then a
machine operator.  *See* id. ex. C ¶ 17.  Adams determined that the
additional duties would consume only 10-20% of Sapien's time, while
allowing Varco to cut labor costs and maintain a revenue-generating
position at 80-90% efficiency.  *See* id. ¶ 19.  Since the RIF, Varco
has neither reestablished the tool room attendant or materials
handler positions, nor hired anyone else to perform those duties.
*See* id. ¶ 22.  As anticipated by Adams, the relevant duties consume
an average of 10-20% of Sapien's time, with Sapien retrieving tools
for other workers as needed.  *See* id. ¶ 21.

Following the RIF elimination of the non-revenue generating
positions, Wilkinson had his employment terminated (along with
materials handler Dennis Rumbaugh, who was then 46) effective
October 31, 2003.  *See* id. ex. A, at 65-66; ex. B ex. Z.[3]  On
January 22, 2004, Wilkinson filed a Charge of Discrimination with

---

[3] At the time of the RIF, five of the nine employees working in
revenue generating positions in the Fabrication Department were
older than forty.  *See* Document No. 12 ex. B ¶ 16.

the Equal Employment Opportunity Commission ("EEOC"), alleging that his termination violated the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.  *See* Document No. 12 ex. A ex. 14.  After receiving a Right to Sue letter, Wilkinson filed suit against Varco in federal court.  Although Wilkinson's Charge of Discrimination and Complaint allege facts relating only to his termination, his Complaint also alleges age discrimination on the grounds that Varco "failed to promote" him.  *See* id.; Document No. 1.  Varco moves for summary judgment on all of Wilkinson's claims.

II.   Summary Judgment Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to inter-rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for

5

summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden."  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986).  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  Anderson, 106 S. Ct. at 2513.

III.  Discussion

6

The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an individual because of that person's age. *See* 29 U.S.C. § 623(a)(1); <u>Roberson v. Alltel Info. Servs.</u>, 373 F.3d 647, 651 (5th Cir. 2004).  As Plaintiff does not purport to present direct evidence of age discrimination, his ADEA claims must be analyzed under the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817 (1973), as modified by <u>Rachid v. Jack in the Box, Inc.</u>, 376 F.3d 305, 312 (5th Cir. 2004).  *See* <u>Machinchick v. PB Power, Inc.</u>, 398 F.3d 345, 352 (5th Cir. 2005).[4]

Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 120 S. Ct. 2097, 2106 (2000).  The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  <u>Id.</u>  The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'"  <u>Id.</u> (quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 113 S. Ct. 2742, 2748 (1993)).  If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not

---

[4] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." <u>Sandstad v. C.B. Richard Ellis, Inc.</u>, 309 F.3d 893, 897 (5th Cir. 2002).

true, but is instead a pretext for discrimination (pretext alternative); or (2) the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative). <u>Rachid</u>, 376 F.3d at 312. If the plaintiff "demonstrates that age was a motivating factor in the [employer's decision to terminate him], it then falls to the [employer] to prove 'that the same adverse employment decision would have been made regardless of discriminatory animus.'" <u>Id.</u> (quoting <u>Mooney v. Aramco Servs. Co.</u>, 54 F.3d 1207, 1217 (5th Cir. 1995)). If the employer fails to carry this burden, the plaintiff prevails. <u>Id.</u>

To establish a prima facie case of age discrimination, the plaintiff must show that: (1) he was discharged; (2) he was qualified for his position; (3) he was within the protected class at the time of discharge; and (4) he was replaced by someone outside the protected class, replaced by someone younger, or otherwise discharged because of his age. *See* <u>Machinchick</u>, 398 F.3d at 350; <u>Bauer v. Albemarle Corp.</u>, 169 F.3d 962, 966 (5th Cir. 1999).[5] In cases where the employer alleges that the termination

---

[5] Insofar as Plaintiff complains that he was not promoted because of his age, his claim will be dismissed for failure to exhaust administrative remedies. "[A] person seeking relief under the ADEA must first file an administrative charge with the EEOC." <u>Julian v. City of Houston, Tex.</u>, 314 F.3d 721, 725 (5th Cir. 2002). Although the claimant is not required to plead all his legal claims in the EEOC charge, he must still assert "the facts that are the basis for the legal claims." <u>Harris v. Parker College of Chiropractic</u>, 286 F.3d 790, 795 (5th Cir. 2002). In the instant

resulted from a job elimination or a reduction in force, the
plaintiff can satisfy the fourth element with direct,
circumstantial, or statistical evidence tending to indicate that
age was a motivating factor for the employer's decision.
*See* Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 41 (5th Cir.
1996); Amburgey v. Corhart Refractories Corp., Inc., 936 F.2d 805,
812 (5th Cir. 1991).[6]

Varco does not dispute that Wilkinson can satisfy the first
three elements of a prima facie case, but argues that he cannot
establish the fourth.  Even assuming that Plaintiff can make a
prima facie case, however, Varco has articulated a legitimate, non-

---

case, Plaintiff's Charge of Discrimination makes no reference
whatsoever to his alleged non-promotion, and complains solely of
of his discharge.  *See* Document No. 12 ex. A ex. 14.  *Cf.* Scott v.
Univ. of Miss., 148 F.3d 493, 514 (5th Cir. 1998)(holding that
district court did not err in refusing to entertain age
discrimination claim that plaintiff never presented of to EEOC),
*overruled on other grounds*, Kimel v. Fla. Bd. of Regents, 120 S.
Ct. 631 (2000).  Even if Plaintiff did present his failure to
promote claim to the EEOC, however, the claim would have been time-
barred.  The uncontroverted summary judgment evidence is that the
most recent position sought by Plaintiff was filled on January 21,
2002, more than 300 days before January 22, 2004, when Plaintiff
filed the EEOC Charge.  *See* Document No. 12 ex. A, at 97-98; ex. B
¶ 17.  Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 879-80
(5th Cir. 2003)(applying 300 day limitation).

[6] In other words, "the plaintiff must produce some evidence
that an employer has not treated age neutrally. . . . Specifically
the evidence must lead the factfinder reasonably to conclude either
(1) that defendant consciously refused to consider retaining or
relocating a plaintiff because of his age, or (2) that defendant
regarded age as a negative factor in such consideration."
Amburgey, 936 F.2d at 812 (quoting Williams v. Gen. Motors Corp.,
656 F.2d 120, 129-30 (5th Cir. 1981)) (quotations and citations
omitted).

discriminatory reason for Wilkinson's termination--the elimination of Wilkinson's non-revenue generating position as part of a RIF. Adams, now Vice President of Manufacturing, avers:

> In October 2003, Varco's business declined, compelling a reduction in force.  With the input and approval of the Human Resources Department, I decided to eliminate the two non-revenue generating positions and delegate any remaining responsibilities of those positions to a machine operator, Robert Sapien, who had previously served as the tool room attendant.  I determined that any remaining non-revenue generating duties could be absorbed by Sapien and would consume only 10 to 20% of his time. By eliminating the two non-revenue generating positions, Varco was able to cut the labor costs of two positions and maintain a revenue generating position operating at 80 to 90% efficiency.

Document No. 12 ex. C ¶ 17.[7]  Inasmuch as Wilkinson offers no response to Varco's motion for summary judgment, Wilkinson fails to raise a fact issue on whether Varco's legitimate, non-discriminatory reason is merely a pretext for age discrimination, or on whether age was otherwise a motivating factor in his discharge.

The Court has also considered the allegations in Wilkinson's Complaint and his deposition testimony.  During his deposition, Wilkinson  stated that when he inquired about being promoted in the 1980s, Adams once told him "We can't teach old dogs new tricks." *See* Document No. 12 ex. A, at 80, 94.  Wilkinson contends that when

---

[7] Wilkinson agreed in deposition testimony that Varco's need for a tool attendant decreased as business declined.  *See* Document No. 12 ex. A, at 64.

he again inquired about promotion in the 1990s, Adams told him "You're not office material," or "You're not management material." *See* id.  An oral statement can be used to demonstrate pretext, or as additional evidence of discrimination, if the remark demonstrates discriminatory animus and is made by a person primarily responsible for the adverse employment action (or by a person with influence or leverage over the official decisionmaker). *See* Laxton v. Gap, Inc., 333 F.3d 572, 583 (5th Cir. 2003).  Only the "old dogs" remark satisfies these requirements, but this remark--which relates to promotion, not termination--preceded Wilkinson's 2003 discharge by more than a decade.  Indeed, the remark preceded Adams's decision to *rehire* Wilkinson in 2000 at the age of 53.  Under such circumstances, Adams's remark does not raise a fact issue on pretext or motivation.  *See* Morrison v. Weyerhauser Co., 119 Fed. Appx. 581, 586 n.7 (5th Cir. 2004)(unpublished) ("'Claims that employer animus exists in termination but not in hiring seem irrational.'") (quoting Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (5th Cir. 1996)); Russell v. McKinney Hosp. Venture, 235 F.3d 219, 229 n.19 (5th Cir. 2000) ("[A]n overwhelming case that the adverse employment actions at issue were attributable to a legitimate, nondiscriminatory reason will not be defeated by remarks that have no link whatsoever to any potentially relevant

time frame.").[8]  Wilkinson also contends that maintenance manager Larry Clark told him he (Wilkinson) was laid off because he was "too damn old."  Document No. 12 ex. A, at 94-96.  There is no evidence, however, that Clark--who was not Wilkinson's supervisor-- had any influence whatsoever over Adams's RIF decision.  *See* id. at 96-97; Laxton, 333 F.3d at 583; Keelan v. Majesco Software, Inc., -- F.3d --, 2005 WL 834481, at *11 (5th Cir. Apr. 12, 2005).[9]

Additionally, Wilkinson stated in his deposition that the EEOC performed a study indicating that the median age of Varco employees was 29, and ultimately determined that there was age discrimination at Varco.  *See* Document No. 12 ex. A, at 87.  However, Wilkinson produces neither the study nor the EEOC finding, and Wilkinson's statements contain inadmissible hearsay.  Moreover, EEOC findings of discrimination are not controlling in subsequent discrimination suits.  *See* Price v. Fed. Express Corp., 283 F.3d 715, 725 (5th Cir. 2002).  Finally, Wilkinson's subjective belief that he was the victim of age discrimination, however genuine, does not create an inference of discriminatory intent on the part of Varco.  *See*

---

[8] In addition, to the extent Adams's remark might be argued to be direct evidence of discrimination, it fails the four-part test articulated in Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (5th Cir. 1996), which requires, *inter alia*, that the discriminatory remark be proximate in time to the adverse employment action at issue.

[9] Additionally, since Clark was not Wilkinson's supervisor and was not Varco's decisionmaker, or involved in the RIF decision, Clark's hearsay remark would be inadmissible against Varco.  *See* Cook v. Miss. Dep't of Human Servs., 108 Fed. Appx. 852, 855-56 (5th Cir. 2004)(unpublished).

<u>Roberson</u>, 373 F.3d at 654; <u>Lawrence v. Univ. of Tex. Med. Branch at</u> <u>Galveston</u>, 163 F.3d 309, 313 (5th Cir. 1999).  Accordingly, Varco is entitled to complete summary judgment.

IV.   <u>Order</u>

For the reasons set forth, it is hereby

ORDERED that Defendant Varco, L.P.'s Motion for Summary Judgment (Document No. 11) is GRANTED, and Plaintiff Steve O. Wilkinson's claims against Defendant Varco, L.P. are DISMISSED with prejudice.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas on this 16th day of May, 2005.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

13